CITY OF BURLINGTON *v.* CENTRAL VERMONT RAILWAY COMPANY.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1909.

*Municipal Corporations—Purpose of Creation—Powers—Construction of Wharves—Statutes—Construction—Constitutional Law—Powers of Government—Taxation—Due Process of Law—Eminent Domain.*

Cities and towns are created to perform such governmental functions as the State may for convenience devolve upon them.

Except for constitutional limitations, the power of the Legislature is practically absolute.

The State, in the absence of constitutional limitation, can build, or aid others in building, wharves for public use and in aid of commerce; and whatever the State can do in this behalf it may delegate to a municipality to do, within proper limits; therefore, the State can authorize cities and towns bordering on navigable waters to build, maintain, and operate public wharves.

Article 9 of our Bill of Rights, prohibiting the raising of a tax unless the purpose for which it is raised appears to the Legislature to be of more service to the community than the money would be if not collected, means that such purpose must be a public one; but what is a public purpose within that meaning is a question for the Legislature, as to which it has a large discretion, which the courts can control, if at all, only in very exceptional cases.

No. 262, Act 1906, empowering the city of Burlington to construct and maintain a public wharf and to borrow money and condemn land therefor, authorizing the city council to determine the public convenience and necessity of the proposed action, and to award damages for the property taken, and allowing an appeal to the county court by any ·person dissatisfied with the award for a review of all questions involved therein, is not unconstitutional as denying due process of law by making the city a judge in its own case, nor otherwise. *Stearns* v. *City of Barre*, 73 Vt. 281, distinguished.

APPEAL by the defendant from proceedings by the city of Burlington to acquire by the right of eminent domain certain lands and premises for the construction of a public wharf. Heard on defendant's motion to dismiss the proceedings, at the March Term, 1908, Chittenden County, *Haselton*, J., presiding. Motion overruled, to which the defendant excepted. The opinion states the case.

*C. W. Witters,* and *H. Henry Powers* for the defendant.

*J. H. Macomber,* and *R. E. Brown* for the plaintiff.

"But powers or franchises of an extraordinary or non-municipal nature may be, and sometimes are conferred upon municipalities, such as are frequently conferred upon individuals

or private corporations. Thus, for example, a city may be expressly authorized in its discretion, to erect a public wharf and charge tolls for its use, or to supply its inhabitants with water or gas, charging them therefor and making . a profit thereby. In one sense such powers are public in their nature because conferred for the public advantage.'' 1 Dillon Munic. Corp. §§27, 103; 2 Abbott, Munic. Corp. 1214; 1 Farnham Water and Water Rights, 522; *DeGruy* v. *Aiken,* 43 La. Ann. 798; *Waddingham* v. *St. Louis,* 14 Mo. 190; *Matthews* v. *Alexandria,* 68 Mo. 115; *People* v. *Broadway Wharf Co.,* 31 Cal. 34; *Jeffersonville* v. *The John Shallcross,* 35 Ind. 19; *Cannon* v. *New Orleans,* 20 Wall. 577; *Packet Co.* v. *St. Louis,* 100 U. S. 428; *Packet Co.* v. *Keokuk,* 95 U. S. 80; *Guy* v. *Baltimore,* 100 U. S. 442; *Mobile* v. *Moog,* 53 Ala. 561; *Webb* v. *Demopolis,* 95 Ala. 116; *St. Martinsville* v. *The Mary Lewis,* 32 La. Ann. 1293; *Roberts* v. *Louisville,* 93 Ky. 95; *Backus* v. *Filor,* 8 Fla. 325; *Galveston* v. *Menard,* 23 Tex. 404; *Marshall* v. *Guion,* 11 N. Y. 461; Gould on Waters, §§115-118.

The taking of the defendant's land by the City Council of Burlington was not such a judicial proceeding as would preclude their acting; nor is the determination of the amount of land taken, nor the award of damages for the land taken. *McMicken* v. *Cincinnati,* 4 Ohio St. 398; *Bass* v. *Ft. Wayne,* 121 Ind. 390; *Stewart* v. *Baltimore,* 7 Md. 514; *Bruggerman* v. *True,* 25 Minn. 123; *Kidder* v. *Jennison,* 21 Vt. 108; *LaFarrier* v. *Hardy,* 66 Vt. 200.

ROWELL, C. J.   This is an appeal from proceedings by the city of Burlington to acquire by the right of eminent domain certain lands and premises on the shore of Lake Champlain belonging to the defendants, for the purpose of a public wharf. The proceedings are under No. 262, Acts of 1906, which purports to authorize the city, as the convenience of the inhabitants and the public good may require, to construct and maintain upon the shores of said lake within the limits of said city or in the waters of said lake adjacent thereto, a public wharf, and to keep the approaches thereof at all times in a proper and safe condition for the landing, loading, and unloading of boats and vessels, subject to the Constitution of the United States and the laws made in pursuance thereof regulating commerce, and to the admiralty jurisdiction of the Federal courts.

For the purpose aforesaid, the act further purports to authorize the city by its council, among other ways, to acquire and take by the right of eminent domain, any lands necessary for such purpose, and provides that when the council has occasion to exercise that right, it shall appoint a time for examining the premises and hearing the parties interested, and give them reasonable notice of the time when and the place where it will consider the question of public convenience and necessity of its proposed action, and the claims of the respective parties for damages; and that if after such examination and hearing the council adjudges that the convenience of the inhabitants and the public good require a public wharf and the taking of land therefor, it shall so award, and shall also award each party owning or interested in property so taken and used, the amount of damages to which it adjudges him entitled, and cause its award to be filed in the office of the city clerk, and recorded in the land records thereof.

The act further provides that any person dissatisfied with the award of the council may appeal therefrom to the county court of the county for a rehearing as to the necessity and convenience of the proposed action of the council, and the taking of land or other property therefor, and the damages awarded, and that such proceedings shall be had in said court as are provided by law for the assessment of damages for land taken for highways; but that nothing in the proceedings shall prevent the council from entering upon such lands and constructing and maintaining such wharf after its award is made and the amount thereof tendered as provided, when the appeal is upon the question of damages only.

Before any action is taken by the council under the act, a meeting of the voters is to be called, to see if the city will vote to procure by construction or otherwise and maintain a public wharf in accordance with the act; and if it does so vote, then the council is to carry the vote into effect, and may borrow money therefor on the credit of the city.

The defendants moved to dismiss the proceedings for that, among other things not now insisted upon, the city has no lawful right to build, maintain, and operate a public wharf and become a public wharfinger; and for that said act is invalid and void because it purports to confer upon the city the primary right to determine the necessity for such wharf, the extent of the taking,

and the damages to the landowners, and consequently is not due process of law.

First, as to the right of the city. The defendants concede that a municipality may be authorized by law to construct and operate a *private* wharf; that it may provide any proper facilities for loading and unloading goods, like coal for its schools, public buildings, etc., as an individual might do; but say that to enter upon any *public* business is foreign to the purpose for which it was created; that municipalities are created and organized for certain governmental ends that meet the demands of their inhabitants in their every-day life, but not for the purpose of. undertaking a public business whereby they enter into competition with the world at large, and incur liabilities and earn revenue like individuals; that if the city of Burlington can take on the character of a public wharfinger, it can build and operate a line of steamboats, and become a common carrier, or build and operate a railroad, or, in short, assume any public character outside the primary purpose of its charter, and wholly foreign to the purpose of its organization.

But it cannot be said that the construction of public wharves by cities and towns bordering on navigable waters is beyond, and wholly foreign to, the purposes for which they are created; for all cities and towns are created for the purpose of performing such governmental functions as the State may for convenience devolve upon them. It cannot be doubted that the State itself, in the absence of constitutional inhibition, can build, or aid others in building, wharves for public use and in aid of trade and commerce; and it is equally clear that whatever the State can do in this behalf, it can delegate to a municipality to do, with proper limits, for the law is, by all the cases, that except where there are constitutional limits upon the Legislature, it is practically absolute. Cooley, Const. Lim., 6th ed., 200 *et seq.* This doctrine has often been announced by this Court, and was acted upon in *Bennington* v. *Park,* 50 Vt. 178, where it was held that the Legislature could authorize a town to bond itself to aid in the building of a railroad out of the State. It is there said that if towns are empowered by the Legislature to aid in the construction of railroads and to levy taxes for that purpose, they are acting in that behalf merely as the agents or appointees of the State, exercising a power of taxation conferred upon them by the State, a power which, in the very nature of things, could

not be delegated by a depositary not having it. It is further said that if such works are so far of public benefit and advantage that the State in answering the ends for which it exists, can provide them as instrumentalities for promoting the prosperity and the development of the resources of its people, it may commission any of its municipalities to aid them when they are thought to be of special local benefit to them; that to deny this because the license empowers the municipality to go outside the purpose of its creation, would be to deny that the State may adopt proper means for promoting the prosperity of its people; that power in towns to grant aid to railroads exists by legislative grant; that power in the Legislature to grant, comes from the people, who, by establishing government, have appointed a trustee to administer the trust of making available to them all the prosperity and growth that sovereign states may rightfully aspire to; and that thus the people have consented in advance that this power may be exercised.

But under Article 9 of our Bill of Rights, no law can be made to raise a tax unless the purpose for which it is raised appears evident to the Legislature to be of more service to the community than the money would be if not collected. This means that the purpose for which the tax is raised must be a public purpose. But what is a public purpose within that meaning, is a question for the Legislature to decide, and concerning which it has a large discretion, which the courts can control only, if at all, in very exceptional cases, and this is not such a case. Cooley, Const. Lim.; 6th ed., 153.

These principles are applicable and controlling here, and therefore it must be held that the act in question, if otherwise valid, confers upon the city the authority claimed.

Second, as to the validity of the act in respect of the manner of taking. The defendants claim that it is invalid in this regard, for that it makes the city a judge in its own case, and does not afford the landowners interested that due process of law guaranteed by the Constitution; that it confers upon the city the right to determine the necessity for taking the land, the extent of the taking, and the damages to be paid therefor, with no right of appeal from its action, and compels the party injured to institute original proceedings at his own expense to obtain relief; that the hearing provided for in the act is not before a disinterested tribunal, and that the landowner is never entitled

thereunder to a disinterested tribunal until he institutes original proceedings, and that this burden confronts him from the first question to the final question of damages, and that therefore the recent case of *Stearns* v. *City of Barre,* 73 Vt. 281, 50 Atl. 1086, 58 L. R. A. 240, 87 Am. St. Rep. 721, seems to demonstrate the invalidity of the act.

But it is incorrect to say that there is no appeal from the action of the city, for the statute expressly provides for an appeal therefrom to the county court on every question involved therein. Hence the case is entirely unlike *Stearns* v. *City of Barre,* for there the statute left the extent of the taking to the final determination of the officers of the city making the condemnation, and for that reason, and that alone, it was in that respect held invalid. But here the statute leaves nothing to the final determination of the officers of the city making the condemnation, but gives a right on appeal to a rehearing before an impartial tribunal on every question in which the defendants are interested, and provides an adequate way in which that right can be exercised to the fullest extent in the regular course of procedure in such cases in the courts of justice. This is the due process of law guaranteed by the Constitution. *State* v. *Stimpson,* 78 Vt. 124, 62 Atl. 14, 1 L. R. A. (N. S.) 1153. And it makes no difference that the defendants had to institute original proceedings at their own expense in order to appeal, for that is but a reasonable regulation of the mode of exercising the right, and not a denial nor an infringement of the right. It is like *In re Marron,* 60 Vt. 199, where we held that the statute requiring a respondent who appeals from the judgment of a justice in a criminal case to procure copies of appeal at his own expense if he would enter his appeal in the county court where alone he can have a trial by a common law jury of twelve men, is a reasonable regulation, not infringing the constitutional right of trial by jury.

*Judgment affirmed and cause remanded.*